# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SANDRA BOLINSKE, | Case No.  1:22-cv-00082-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 21) and PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. 27)** |
| vs. | |
| STINKER STORES, INC., and Idaho corporation, | |
| Defendant. | |

Before the Court are Defendant Stinker Stores Inc.'s Motion for Summary Judgment (Dkt. 21) and Plaintiff Sandra Bolinske's Cross-Motion for Summary Judgment (Dkt. 27).  All parties have consented to the exercise of jurisdiction by a United State Magistrate Judge.  (Dkt. 7).  For the reasons stated below Defendant's Motion is granted in part and denied in part and Plaintiff's Motion is denied.

## <u>BACKGROUND</u>

### A.  <u>Plaintiff's employment and the "Transition Plan."</u>

Defendant is a company, co-owned by Charley and Nancy Jones, that sells fuel and operates convenience stores throughout Idaho, Colorado, and Wyoming.  Def.'s Stmnt. of Facts ¶ 1 (Dkt. 21-2).  In 2013, Defendant hired Plaintiff as its HR director.  Def.'s Stmnt. of Facts ¶ 3 (Dkt. 21-2).  In that role, Plaintiff served as a member of Defendant's "leadership team," a group of executives and department heads including Mr. and Ms. Jones.  Pln.'s Stmnt. of Facts ¶¶ 1-2 (Dkt. 27-2).  Historically, Plaintiff reported directly to Mr. Jones.  Def.'s Stmnt. of Facts ¶6 (Dkt. 21-2).

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 1**

In April of 2021, Mr. Jones announced his intent to transition into retirement. *Id.* As part of his retirement plan, Mr. Jones promoted two members of the leadership team, Nate Brazier and Kristal Searle, to lead the company moving forward. *Id.* Mr. Jones met with Plaintiff personally to discuss his retirement and informed her that she would begin reporting to Ms. Searle. *Id.* ¶ 7. Plaintiff voiced concerns about Ms. Searle's experience and leadership skills. *Id.* Given these concerns, Plaintiff informed Mr. Jones that she intended to immediately resign. *Id.* Mr. Jones, however, implored Plaintiff to continue working for Defendant. *Id.* ¶¶ 8-9; Pln.'s Stmnt. of Facts ¶ 9 (Dkt. 27-2). Plaintiff agreed, proposing a transition plan wherein she would continue to work through December 31, 2021, and assist in training her replacement. Pln.'s Stmnt. of Facts ¶ 9 (Dkt. 27-2)

In late April of 2021, Plaintiff reached out to Ms. Searle and Mr. Brazier to negotiate a transition plan. Pln.'s Stmnt. of Fact ¶ 10 (Dkt. 27-2). Plaintiff emailed a draft of the plan to Ms. Searle and Mr. Brazier on April 30, 2021, stating:

> Here is the agreement that you asked me to put together. If you both agree to this, please initial and then I can place in my personnel file. If you have any changes, comments, concerns, give me a call. Looking forward to making this a smooth and successful transition for everyone.

Bolinske Dec., Ex. B (Dkt. 27-4). Ms. Searle suggested some minor edits, updating a section heading and correcting Plaintiff's proposed end date. *Id.* Plaintiff incorporated those edits and sent a final draft to Ms. Searle and Mr. Brazier on May 4, 2021. Def.'s Stmnt. of Facts ¶ 9 (Dkt. 21-2). Ms. Searle and Mr. Brazier then initialed the "Resignation and Transition Plan for Sandy Bolinske" (the "Transition Plan" or "Plan"). *Id.*

The Plan contains two provisions the interpretation of which the parties hotly contest. First, the Plan states, "My last day of employment with Stinker Stores, Inc. will be December 31, 2021." Bolinske Dec., Ex. D (Dkt. 27-4). Second, the Plan states, "[i]f we mutually agree that

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 2**

my services are no longer needed prior to December 31, 2021, my compensation and benefits

continue to the end of my resignation period." *Id.*

Later in May, about a month after the Transition Plan had been signed, Plaintiff met with

Mr. Jones and Ms. Searle to discuss her transition.  Bolinske Dep. at 51:22 – 53:17 (Dkt. 21-7).

At that meeting, the parties discussed that, if Plaintiff were to find another position before

December 31, 2021, she would leave Defendant at that time but be available to work on

consulting basis.  *Id.*  Subsequently, in May, June, and July of 2021, Plaintiff began her search

for new employment.  Ashby Dec., Ex. B at 4-5 (Dkt. 30-3).  Plaintiff expressed an

understanding that, if she found a new job, there would be no consequences if she left

employment with Defendant before December 31, 2021.  Bolinske Dep. at 139:2-11 (Dkt. 21-7).

**B.  <u>Plaintiff takes leave for back surgery.</u>**

Plaintiff scheduled a back surgery for August 9, 2021, to address the lingering symptoms

of an accident in 2016.  Pln.'s Stmnt. of Facts ¶¶ 13-15 (Dkt. 27-2).  Anticipating that she would

need to take leave to recover from her surgery, Plaintiff asked Suzanne Holland, another HR

employee, for Family Medical Leave Act ("FMLA") paperwork to provide to her doctor.  Def.'s

Stmnt. of Facts ¶ 18 (Dkt. 21-2).  Plaintiff had previously taken FMLA leave in both 2016 and

2018 without incident.  *Id.* ¶¶ 4-5.  After her surgery, Plaintiff reported two weeks of paid time

off ("PTO") from August 9, 2021, to August 20, 2021, on her timesheets.[1]  *Id.* ¶ 20.  Then,

beginning Monday, August 23, 2021, Plaintiff began reporting full days of regular work on her

timesheets.  *Id.*  Between August 23, 2021, and October 11, 2021, Plaintiff's timesheets do not

---

[1] Defendant has a unique PTO structure for its executives, allowing them unlimited leave.  Pln.'s
Stmnt. of Facts ¶ 18 (Dkt. 27-2).  However, it appears that this unlimited PTO could only be
used by the day, not by the hour.  *Id.* ¶ 19.  Thus, a member of Defendant's leadership team
using PTO would report a full day off on their timesheet, irrespective of whether they took that
entire day off or not.  *Id.*

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT – 3**

show any FMLA leave.  *Id.*  Additionally, Defendant's internal spreadsheet for tracking employee FMLA leave does not list any hours for Plaintiff, although her name is on the spreadsheet.  *Id.* ¶ 24.

Plaintiff does not dispute the veracity of her timesheets or Defendant's FMLA spreadsheet, but notes that those pieces of evidence do not capture the full story of her leave. For instance, at the time of Plaintiff's surgery, Defendant's unlimited PTO policy for executives was new, so no executive had taken FMLA leave with the policy in place.  Pln.'s Stmnt. of Facts ¶ 18 (Dkt. 27-2).  And, to that end, Plaintiff represents that it was not possible (or at least she did not believe it was possible) to report concurrent FMLA leave and PTO on a timesheet using Defendant's timekeeping software.  *Id.* ¶ 19.  Defendant disputes this and has submitted an affidavit from a current HR employee demonstrating that Defendant's timekeeping software can accommodate inputting FMLA and PTO for the same time period.  *See* Capps Dec. (Dkt. 30-4). Plaintiff also states that the Defendant's FMLA spreadsheet only tracked intermittent FMLA hours, not continuous leave, so it is unremarkable that the spreadsheet does not list any hours for Plaintiff; Plaintiff maintains that her leave was of the continuous variety.  Pln.'s Stmnt. of Disputed Facts ¶ 19 (Dkt. 27-3).

In any event, on August 26, 2021, Plaintiff's doctor returned her FMLA paperwork to Defendant, recommending up to twelve weeks of leave for Plaintiff's recovery.  Def.'s Stmnt. of Facts ¶ 23 (Dkt. 21-2).  Plaintiff asked Ms. Holland to approve Plaintiff's FMLA leave request. *Id.*  Ms. Holland reviewed Plaintiff's timesheets and asked how she should word the FMLA approval letter given that Plaintiff had "been working."  *Id.*  Plaintiff informed Ms. Holland that she would "work out" her timesheet and that she had reported PTO for her first week following surgery because she had been working "off and on."  *Id.*  Eventually, Ms. Holland issued a letter

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 4**

approving Plaintiff for "up to 12 work weeks of unpaid leave" effective August 9, 2021.  Pln.'s
Stmnt. of Facts ¶ 17 (Dkt. 27-1); Bolinske Dec., Ex. I ((Dkt. 27-4).  If Plaintiff took the full
twelve weeks of leave, her anticipated return date would have been November 1, 2021.  Bolinske
Dec., Ex. I ((Dkt. 27-4).

On August 27, 2021, Plaintiff emailed Ms. Searle and described Plaintiff's post-surgery
progress, including the need for her to complete physical therapy ("PT") at home in the weeks to
come, and that she was "gradually increasing the number of hours I am working per day" up to
6.5 hours.  Bolinske Dec., Ex. J (Dkt. 27-4).  At that time, even though she was not yet working
full days, Plaintiff's timesheets reflected that she was, and she asked Ms. Searle for permission to
"leave her hours as is" given that leadership team PTO could not be taken by the hour.  *Id.*  Ms.
Searle, citing the inability to "split Leadership Team PTO," approved Plaintiff's approach to
reporting her hours.  *Id.*  Then, in another email to Ms. Searle on September 13, 2021, Plaintiff
confirmed that she was attending PT three times a week and was "back to working full days but
want[ed] to continue working from home [to] ice and do my PT[.]"  Bolinske Dep., Ex. 20 (Dkt.
21-9).  The record contains no further correspondence between the parties regarding Plaintiff's
work schedule or post-surgery recovery.

C. **Plaintiff's termination**

On September 15, 2021, Plaintiff met with Mr. Brazier at a coffee shop and told him that
members of the leadership team were taking bets on how long the "marriage" between Mr.
Brazier and Ms. Searle would last.  Def.'s Stmnt. of Facts ¶ 32 (Dkt. 21-2).  Plaintiff refused to
tell Mr. Brazier which members of the leadership team were making these "bets," although he
later found out that it was Mike Russell, another member of Defendant's leadership team.  *Id.*

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT – 5**

¶32-33.  She also raised concerns with Ms. Jones and her past treatment of members of the leadership team.  Pln.'s Stmnt. of Facts ¶ 23 (Dkt. 27-2).

Shortly thereafter, on September 22, 2021, Plaintiff, Ms. Searle, and another member of Defendant's leadership team communicated via email about reclassifying an IT employee from non-exempt to exempt under the Fair Labor Standards Act ("FLSA").  Def.'s Stmnt. of Facts ¶ 36 (Dkt. 21-2).  Plaintiff responded to this request on September 27, 2021, expressing "hesitation that this position is an exempt level job."  *Id.*  The following day, after more discussions amongst the leadership team, Plaintiff sent an email stating "[i]f you both are comfortable with what has been discussed and we are all willing to agree to disagree on the level of status for this position, then we can move forward with" the reclassification.  *Id.* ¶ 37.

On or around September 21, 2021, Mr. Brazier and Ms. Searle met and decided to terminate both Plaintiff and Mr. Russell, ostensibly because of their lack of support for Defendant's new leadership structure.  Def.'s Stmnt. of Facts ¶ 34 (Dkt. 21-2).  They scheduled a meeting with Mr. Jones for September 29, 2021, to inform him of the decision.  *Id.*  Due to scheduling issues, Plaintiff and Mr. Russell were not informed of the decision to terminate them until October 11, 2021.  *Id.*  Defendant coordinated these terminations in back-to-back meetings using identical scripts.  Searle Dec., Ex. B (Dkt. 30-2).

This lawsuit followed.  Plaintiff raises five claims: (i) breach of contract, (ii) an Idaho Wage Claim Act violation, (iii) a Family Medical Leave Act ("FMLA") violation, (iv) an Americans with Disabilities Act ("ADA") violation, and (v) termination in violation of public policy.  The parties filed cross-motions for summary judgment on each claim.  This Court held oral argument on the cross motions on May 12, 2023.  Now, having reviewed the parties' briefs,

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 6**

heard oral argument, and otherwise being fully advised, the Court enters the following

Memorandum Decision and Order.

## LEGAL STANDARD

"A grant of summary judgment is appropriate when there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc.*,

979 F.3d 639, 643 (9th Cir. 2020) (citing *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277

(9th Cir. 2017)).  Material facts are those which may affect the outcome of the case.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine if there is

evidence from which a "reasonable jury could return a verdict for the nonmoving party." *Id.*  In

assessing a motion for summary judgment, a court must view the evidence and reasonable

inferences that may be drawn from it, in the light most favorable to the non-moving party.

*Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 432 (9th Cir. 2023).

The party moving for summary judgment "bears the burden of establishing the basis for

its motion and identifying evidence that demonstrates the absence of a genuine issue of material

fact." *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017) (citing *Celotex Corp. v. Cartrett*,

477 U.S. 317, 323 (1986)).  If the moving party will bear the burden of proof on an issue at trial,

"the movant must affirmatively demonstrate that no reasonable trier of fact could find other than

for the moving party." *Soremekin v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

Conversely, if the non-moving party will bear the burden of proof on an issue, the moving party

can prevail by either "presenting evidence that negates an essential element of the non-moving

party's claim or by merely pointing out that there is an absence of evidence to support an

essential element of the non-moving party's claim." *Delamater v. Anytime Fitness, Inc.*, 722 F.

Supp. 2d 1168, 1174 (E.D. Cal. 2010).  "If the moving party meets its initial burden, the burden

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 7**

then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists." *Id.*

When considering cross-motions for summary judgment, each motion must be evaluated on its own merits. *Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross motions for summary judgment does not obviate a court's responsibility to determine if a genuine issue of material fact exists. *Id.*

## DISCUSSION

### A. There is a genuine dispute of material fact as to whether a contract formed.

Idaho law provides four elements for a breach of contract claim: (i) existence of a valid contract, (ii) breach of the terms of that contract, (iii) causation of damages, and (iv) the extent of those damages.[2] *Safaris Unltd., LLC v. Von Jones*, 353 P.3d 1080, 1084 (Idaho 2015). Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish the first two elements. Def.'s Memo. in Supp. of MSJ at 3-7 (Dkt. 21-1). In contrast, Plaintiff argues that she is entitled to summary judgment because her evidence establishes that no reasonable trier of fact would find against her on any of the elements. Pln.'s Memo. in Supp. of Cross-MSJ and Response to MSJ at 4-10 (Dkt. 27-1). The Court finds that there is a genuine dispute of material fact as to the formation of a valid contract and only addresses that issue.

Contract formation requires a "meeting of the minds" between the parties "on all material terms to the contract." *Barry v. Pac. W. Const., Inc.*, 103 P.3d 440, 444 (Idaho 2004). "A

---

[2] Since this is a state law claim over which the Court exercises supplemental jurisdiction under 28 U.S.C. § 1367(a), Idaho's choice of law rule governs the applicable standard. *Douglas v. U.S. Dist. Ct. for the Cent. Dist. Of Cal.*, 495 F.3d 1062, 1067 n.2 (9th Cir. 2007). Application of Idaho's "most significant relationship test" for choice of law clearly confirms that Idaho law applies to this claim. *See Ryals v. State Farm Mut. Auto. Ins. Co.*, 1 P.3d 803, 806 (Idaho 2000).

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 8**

meeting of the minds is evidenced by a manifestation of intent to contract which takes the form of an offer and acceptance." *Id.* "When the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists." *Mackay v. Four Rivers Packing Co.*, 179 P.3d 1064, 1069 (Idaho 2008). The crux of Plaintiff's breach of contract claim is whether the Transition Plan was a contract that limited Defendant's ability to terminate her at-will before December 31, 2021.

In Idaho, employment is presumed to be at-will unless the employment contract specifies the duration of employment or limits the reasons for which an employee may be terminated. *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 387 (Idaho 2005). To displace the presumption, the parties must "agree to a contract term limiting the right of either to terminate the contract at will." *Id.* (citing *Atwood v. W. Const. Inc.*, 923 P.2d 479, 482 (Idaho Ct. App. 1996)). A limitation on the parties' ability to terminate an employment contract at-will may be express or implied if, when considering "all the circumstances surrounding the relationship, a reasonable person could conclude that both parties intended that either party's right to terminate the relationship was limited by the implied in fact agreement." *Id.*

Defendant argues that Plaintiff cannot meet her burden to establish the existence of a contract for two reasons. First, Defendant contends that the Transition Plan does not contain an express provision limiting Defendant's ability to terminate Plaintiff. Def.'s Mem. in Supp. of MSJ at 4-5 (Dkt. 21-1). Second, to the extent such a term could be implied, Defendant states that Plaintiff began searching for other jobs by May, June, and July of 2021, conceded in her deposition that the Transition Plan did not require her to remain employed through December 31, 2021, and was silent as to what would happen if Defendant terminated her employment before that date. *Id.* at 5-6.

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 9**

In contrast, Plaintiff points to the conduct of Mr. Jones, Ms. Searle, and Mr. Brazier in the lead-up to signing the Transition Plan. Pln.'s Mem. in Supp. of Cross-MSJ at 6-7 (Dkt. 27-1). She contends that the Plan was negotiated between the parties and Ms. Searle and Mr. Brazier signed it after being specifically informed that it was "an agreement." *Id.* Finally, she makes an alternative argument that, even if the Transition Plan did not expressly confirm her employment through December 31, 2021, the parties' conduct implied a term to that effect. *Id.* at 8.

There is a genuine dispute of material fact as to whether a contract formed that provided for Plaintiff's employment through December 31, 2021. On one hand, Defendant has not carried its burden because Plaintiff has pointed to evidence that could lead a reasonable trier of fact to find in her favor that a contract formed, guaranteeing her employment until December 31, 2021. Plaintiff's evidence includes emails between her and Ms. Searle dated April 26 and April 27, respectively, showing Plaintiff asking if Ms. Searle was "comfortable with" Plaintiff remaining "employed on a full-time basis as an employee with the intent that [Plaintiff] would leave at the end of the year[.]" Bolinske Dec., Ex. A (Dkt. 27-4). Ms. Searle voiced her "agreement with [Plaintiff's] proposed plan of remaining a full-time employee through the end of the calendar year." *Id.* Further, when submitting a draft Transition Plan to Ms. Searle and Mr. Brazier, Plaintiff stated, "[h]ere is the agreement that you asked me to put together. If you both agree to this, please initial and then I can place in my personnel file." *Id.*, Ex. B. Ms. Searle and Mr. Brazier subsequently initialed the final Transition Plan submitted on May 4, 2021. *Id.*, Ex. D. Moreover, the Plan contains two provisions relevant to Plaintiff's continuing employment with Defendant:

> My last day of employment with Stinker Stores, Inc. will be December 31, 2021. From now until the end of the year, the following outlines my transition plan to

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 10**

leave Stinker in a position that will continue to ensure success for the company
and in the Human Resources department.
. . . .
If we mutually agree that my services are no longer needed prior to December 31,
2021, my compensation and benefits continue to the end of my resignation period.

*Id.* Viewing facts and drawing inferences in Plaintiffs favor, the evidence leads to a reasonable

inference that Plaintiff and Defendant agreed to have Plaintiff work for a set term, ending

December 31, 2021, that rebutted the presumption of at-will employment. *See Jenkins*, 108 P.3d

at 387 ("Unless an employee is hired pursuant to a contract that *specifies the duration of the*

*employment* or limits the reasons for which an employee may be discharged, the employment is

at the will of either party"); *see also Mackay*, 179 P.3d at 1068-69 (analyzing an oral

employment contract for a set duration).  Accordingly, Defendant's Motion for Summary

Judgment as to this claim is denied.

On the other hand, Plaintiff has not shown undisputed facts that would lead every

reasonable juror to find in her favor as Defendant has presented evidence from which a

reasonable juror could conclude that a contract did not form because the parties did not have a

mutual understanding of material terms.  Critically, Defendant's evidence leads to an inference

that Plaintiff did not view the Transition Plan as limiting her ability to terminate her employment

relationship with Defendant at any time.  Ashby Dec., Ex. A (Dkt. 21-7).  For instance, Plaintiff

testified to a May 26, 2021, meeting with Ms. Searle and Mr. Jones, where they discussed her

"exploring other job opportunities and that [she] might take another job if the right offer came

along."  *Id.* at Depo. 53:2-17.  Further, she testified that the transition plan would impose no

consequence on her if she left employment before December 31, 2021, and that the plan did not

state what would happen if Defendant terminated her before that date.  *Id.* at Depo. 139:2-22.

Finally, Plaintiff's discovery responses show that she was seeking other employment as early as

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT – 11**

May of 2021.  Ashby Dec., Ex. B (Dkt. 30-3).  Taken together, this evidence leads to a

reasonable inference that – even if Plaintiff wished for the Transition Plan to be a binding

contract – the parties may not have shared a mutual understanding of the material terms of that

agreement sufficient for it to form in fact.  Accordingly, Plaintiff's Motion for Summary

Judgment as to this claim is denied because there is a genuine dispute as to whether the

Transition Plan was a valid contract that set a specific term for her employment.

Finally, both parties agree that Plaintiff's Wage Claim Act claim hinges on whether the

Transition Plan was a valid employment contract.  Accordingly, the Cross-Motions for Summary

Judgment on the WCA claim are denied for the same reasons as the contract claim – there is a

genuine dispute of material fact as to whether a contract formed.

## B.  Plaintiff's FMLA claims fail as a matter of law.

"The FMLA creates two interrelated substantive rights for employees."  *Xin Liu v.*

*Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003).  First, an employee may take up to twelve

weeks of leave for the reasons set forth in 29 U.S.C. § 2612(a)(1).[3]  *Id.*  Second, an employee

who avails themselves of FMLA leave "has the right to be restored to his or her original position

or to a position equivalent in benefits, pay, and conditions of employment upon return from

leave."  *Id.*  The FMLA sets out two methods of protecting the above substantive rights.  *Sanders*

*v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011).  First, covered employers are prohibited

from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any

---

[3] Qualifying reasons for an employee to take FMLA leave are: (i) to care for a child after their
birth; (ii) to care for a child placed with the employee for adoption or foster care; (iii) to care for
a "spouse, or a son, daughter, or parent . . . [with] a serious health condition"; (iv) a serious
health condition that "makes the employee unable to perform the functions" of their job; and (v)
a "qualifying exigency" arising out of a "spouse, or a son, daughter, or parent of the employee"
on active duty with in the Armed Forces.  29 U.S.C. § 2612(a)(1)(A)-(E).  No one disputes that
Plaintiff's back surgery would qualify her to take FMLA leave.

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY**
**JUDGMENT – 12**

right provided" by the FMLA.  29 U.S.C. § 2615(a)(1).  Second, employers are prohibited from "discharge[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by" the FMLA.  29 U.S.C. § 2615(a)(2).  Claims brought under § 2615(a)(1) are referred to as "interference" claims, whereas claims brought under § 2615(a)(2) are known as "retaliation claims."  *Sanders*, 657 F.3d at 777.  Plaintiff brings both an interference and a retaliation claim.

    1.   <u>Defendant is entitled to summary judgment on Plaintiff's interference claim</u>.

       Plaintiff's interference claim rests on the premise that Defendant failed to reinstate her by terminating her employment before she returned from FMLA leave.  Pln.'s Mem. in Supp. of MSJ at 12-13 (Dkt. 27-1).  Put differently, Plaintiff claims that because she was terminated before November 1, 2021, she was not reinstated to her position as Defendant's HR Director.

       Success on an interference claim requires a plaintiff to show that "(1) [s]he was eligible for the FMLA's protections, (2) [her] employer was covered by the FMLA, (3) [s]he was entitled to leave under the FMLA, (4) [s]he provided sufficient notice of his intent to take leave, and (5) [her] employer denied him FMLA benefits to which he was entitled."  *Sanders*, 657 F.3d at 778. The Court finds the fifth element dispositive, as Plaintiff returned to work in her original position nearly a month before her termination.

       Plaintiff's viewpoint that she remained on FMLA leave until November 1, 2021 – regardless of how much work she performed for Defendant – is untenable.  Except for one day of PTO in early October, Plaintiff reported working full days on her timesheets beginning August 23, 2021, until the date she was terminated.  Def.'s Stmnt. of Facts ¶ 20 (Dkt. 21-2).  Although there is conflicting evidence about whether Plaintiff worked part-time upon her return from surgery, she reported in a September 13, 2021, email that she was "working full days" from

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 13**

home.[4]  Bolinske Dep., Ex. 20 (Dkt. 21-9).  And, on September 15, 2021, Plaintiff reported

meeting with Mr. Brazier and advising him on various matters "[i]n my capacity as HR

Director."  Bolinske Dec. ¶ 46 (Dkt. 27-4).  In short, while Plaintiff may have been approved for

*up to* twelve weeks of FMLA leave, there is no genuine dispute that Plaintiff returned to work in

her previous position on a full-time basis by September 13, 2021, at the latest.  Consequently,

summary judgment is granted in Defendant's favor on Plaintiff's interference claim because she

cannot establish an element on which she will carry the burden of proof at trial.

   2.  <u>Summary judgment in Defendant's favor is appropriate on the Retaliation claim.</u>

     Retaliation claims are analyzed according to the *McDonnell-Douglas* burden-shifting

framework.  *Bushfield v. Donahoe*, 912 F. Supp. 2d 944, 953 (D. Idaho 2012).  Under that

approach, a plaintiff must first establish a prima facie case of discrimination.  *Id.*  If the plaintiff

establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate non-

discriminatory purpose for the adverse employment action.  *Id.*  If the defendant does so, the

plaintiff must then show that the reason is pretextual, "either by showing the employer's

proffered explanation is not credible, or by showing that unlawful discrimination more likely

than not motivated the employer."  *Id.*  Defendant and Plaintiff focus a majority of their

arguments on the issue of pretext, which the Court finds dispositive.

     Pretext can be shown through direct or circumstantial evidence.  *Godwin v. Hunt Wesson,*

*Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).  Plaintiff's evidence of pretext is exclusively

circumstantial.  Circumstantial evidence of pretext "must be specific and substantial in order to

create a triable issue."  *Id.* at 1222 (internal quotation marks omitted).  Pretext can be shown

---

[4] Although Plaintiff generally states that during this time she was doing PT, icing, and taking
pain medication that would have prevented her from working full time, she points to no evidence
after September 13, 2023, to support that premise.

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT – 14**

through "weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reason." *Hutchins v. DIRECTV Customer Serv., Inc.*, 963 F. Supp. 2d 1021, 1030 (D. Idaho 2013) (citing *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002)).  However, in assessing circumstantial evidence of pretext, courts must be mindful that they do not act as a "super-personnel department" by "second guess[ing] [the] employer's business judgments." *Id.* (citing *Simms v. Okla. Dep't of Mental Health & substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)).

Defendant asserts that it fired Plaintiff because she undermined and failed to support the new leadership of Mr. Brazier and Ms. Searle.  Def.'s Mem. in Supp. of MSJ at 15 (Dkt. 21-1). Plaintiff asserts a variety of reasons why this justification is pretextual.  However, the primary thrust of her arguments is that the stated reason for her firing is incredible because she was merely doing her job as an HR director by reporting unvarnished news of poor employee morale to the leadership team.  Pln.'s Mem. in Supp. of MSJ at 28-29 (Dkt. 27-1).  Or, to put it in Plaintiff's words, "[her] concerns were valid – Ms. Searle was a bully who was verbally abusing the Finance Department and [Plaintiff] should have and did bring this to the President's attention.  For Stinker to suggest an employer has a valid basis for terminating an HR Director for bringing legitimate and serious claims forward to the company President falls short."  Pln.'s MSJ Suppl. at 5 (Dkt. 38).

This argument is not persuasive, as it merely invites this Court to act as an impermissible "super-personnel department."  To be sure, Plaintiff forcefully argued that Defendant unwisely favored Ms. Searle's leadership role at the expense of employee morale.  Indeed, Plaintiff's

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 15**

evidence shows that multiple employees, not just Plaintiff, were fired or quit based on their personality conflicts with Ms. Searle. *See, e.g.*, Pln.'s Suppl. Mem. at 6 (Dkt. 38). Yet, this Court's role is not to judge the prudence of Defendant's decision to retain an unpopular executive. Rather, this Court must determine if there is a genuine issue of fact regarding whether the reason for Plaintiff's termination was pretext for discrimination.

Looking at that key question, the evidence – even viewed in a light most favorable to Plaintiff – presents no genuine dispute of fact. Plaintiff had previously taken FMLA leave – first in 2016 and again in 2018 – for longer periods of time[5] without any retaliation or negative treatment from Defendant. Bolinske Dep. at 31:1-34:15 (Dkt. 21-7). Granted, Plaintiff points out that Defendant's leadership changed between 2016 and 2021, with the addition of Ms. Searle and Mr. Brazier, although ownership by Mr. and Ms. Jones remained constant. Yet, the evidence shows that it is precisely this change in leadership structure in 2021, and not any discriminatory animus harbored by Ms. Searle and Mr. Brazier, that hastened Plaintiff's departure from Defendant. Without a doubt, Plaintiff struggled with reporting to Ms. Searle and questioned her leadership abilities. Plaintiff initially threatened to resign when Mr. Jones informed her that she would report to Ms. Searle following his "semi-retirement." Def.'s Stmnt. of Facts ¶ 27 (Dkt. 21-2). Plaintiff informed Mr. Brazier at a meeting in September 2021 that she thought the leadership team was dysfunctional and that other employees were taking bets on when the "marriage" between him and Ms. Searle would break up. *Id.* ¶ 32. When asked which employees were making bets, Plaintiff refused to name them. *Id.* These facts, viewed in Plaintiff's favor, show that she, at a minimum, did not believe that Defendant could be successful

---

[5] In 2016, Plaintiff took three-and-a-half months of FMLA leave, then, in 2018, Plaintiff took four weeks of FMLA leave. Bolinske Dep. at 31:1-34:15 (Dkt. 21-7).

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 16**

with Ms. Searle at the helm. This lack of trust in Ms. Searle's leadership capabilities (whether justified or not) fits squarely within Defendant's proffered reason for Plaintiff's termination.

Moreover, the record shows that multiple employees were fired or quit based on their personality conflicts with Ms. Searle or failure to support Defendant's new leadership structure. Most prominently, Defendant terminated Mr. Russell, another member of the leadership team, the same day as Plaintiff and for the same reasons. *Id.* ¶ 34. Plaintiff conceded that Mr. Russell did not have medical conditions or take FMLA leave. Bolinske Dep. 163:17-165:2 (Dkt. 21-7). Evidence showing that an employer treated a similarly situated employee[6] in the same manner "negat[es] any showing of pretext." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001); *see also Lattimore v. Euramax Int'l, Inc.*, 771 Fed. App'x 433, 433 (9th Cir. 2019) (holding that Plaintiff had failed to raise a triable issue of fact on pretext because the employer "terminated the employment of a similarly situated, non-disabled employee").

The same is true of Plaintiff's additional evidence, submitted after this Court granted her Motion to Compel, which cuts against her pretext argument. Plaintiff notes that "[n]umerous employees left [Defendant] or sought transfer to other departments, at least in part, due to Ms. Searle's treatment of them." Pln.'s Suppl. Mem. at 6 (Dkt. 38). Conspicuously, most of the employees who quit or were terminated because of Ms. Searle did not have disabilities or take

---

[6] Plaintiff contends that Mr. Russell was not similarly situated to her because "[h]e was not an HR Director." Pln.'s Mem. in Supp. of MSJ at 29-30 (Dkt. 27-1). Plaintiff's conception of what constitutes a similarly situated employee is too narrow. Taken at face value, Plaintiff's argument would mean that there were no similarly situated employees at Defendant because she was Defendant's only HR director. There is no requirement of a "near one-to-one mapping between employees" in order to find them similarly situated. *Earl v. Nielson Media Research, Inc.*, 658 F.3d 1108, 1115 (9th Cir. 2011). Instead, employees are similarly situated "when they have similar jobs and display similar conduct." *Id.* (citing *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003)) (internal quotation marks omitted). Here, Plaintiff and Mr. Russell were both members of the leadership team and were both fired for similar conduct in failing to support Defendant's new leadership structure.

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 17**

FMLA leave prior to their departure.  And, even though one employee with a disability was fired, there is no evidence to show that the firing was because of her disability.  Instead, the evidence shows that employee was fired for much the same reason as Plaintiff: she "had made negative comments about Ms. Searle." *Id.* at 6.  In short, Plaintiff's new evidence shows that numerous other employees either quit or were terminated the same reason as Plaintiff – they were unable to tolerate Ms. Searle's management style and the work culture it engendered. While Plaintiff may personally disagree with this Defendant's decision as a matter of good business practice, that disagreement does not amount to a substantial and specific showing of pretext.  Accordingly, summary judgment in Defendant's favor is appropriate on Plaintiff's FMLA retaliation claim because she cannot demonstrate the proffered reason for her termination was pretextual.

## C.  Plaintiff's ADA claim fails as a matter of law.

Count One of the Complaint alleges that Defendant discriminated against Plaintiff on the basis of her disability when it terminated her after back surgery and without engaging in an interactive process to provide reasonable accommodations.  Compl. ¶¶ 30-37 (Dkt. 1-3).

Plaintiff's ADA claim is subject to the same *McDonnell-Douglas* burden shifting approach described above.  *See Hutchins v. DIRECTV Customer Serv., Inc.*, 963 F. Supp. 2d 1021, 1027 (D. Idaho 2013).  Thus, Plaintiff bears the initial burden of establishing a prima facie disability discrimination claim.  *Id.* If she does so, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for her termination.  *Id.*  If Defendant meets this burden, Plaintiff must then show either direct or circumstantial evidence that Defendant's proffered reasoning is pretextual.  *Id.*

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 18**

The ADA makes it illegal for any covered entity to "discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). Success on a disability discrimination claim requires a Plaintiff to establish three elements: (i) she is disabled as defined by the ADA; (ii) she is qualified to perform the essential functions of her job with or without reasonable accommodations; and (iii) she suffered an adverse employment action because of her disability. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). Defendant does not challenge Plaintiff's showing as to the prima facie case and instead, as above, argues that Plaintiff has not raised a genuine issue with respect to pretext. Def. Mem. in Supp. of MSJ at 15-18 (Dkt. 21-1). Once again, the Court finds this issue to be dispositive of Plaintiff's ADA claim.

Plaintiff suffered serious injuries in a 2016 accident, leaving her with several disabilities. Bolinske Dep. at 28:11-14 (Dkt. 21-7). Following a lengthy post-accident hospitalization, Plaintiff underwent rotator-cuff surgery in 2018, and back fusion surgery in 2021, both related to the same accident. *Id.* at 32:10-33:24. During this time period, Plaintiff testified that her disabilities did not impact her job performance and, importantly, no one at Defendant ever made negative comments about her medical condition. *Id.* at 129:2-130:18. Indeed, in Plaintiff's tenure as HR director, she could not recall a single instance of any agency finding that Defendant had discriminated against an employee. *Id.* at 172:19-173:10. And, as described above, the firing of Mr. Russell on the same day and for the same reasons as Plaintiff negates any inference of pretext, especially where Mr. Russell had no known disabilities. *See id.* at 164:25-165:2. In sum, the evidence does not raise any genuine dispute of fact that Defendant's stated reasoning

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 19**

for terminating Plaintiff were merely pretext for disability-related discrimination, and summary judgment is granted in Defendant's favor on this claim.[7]

## D.  **Plaintiff's termination in violation of public policy claim fails as a matter of law.**

Count Four of the Complaint asserts a wrongful discharge in violation of public policy claim.  Compl. ¶¶ 53-59 (Dkt. 1-3).  Plaintiff alleges that Defendant requested her to "classify an employee as exempt, as opposed to non-exempt, in spite of the fact that the employee did not qualify as exempt" under the Fair Labor Standards Act ("FLSA").  *Id.*  ¶ 55.  When Plaintiff expressed vocal opposition to this plan, Defendant terminated her "in retaliation for her efforts to comply with state and federal law in violation of public policy."  *Id.* ¶ 58.

Idaho recognizes a limited exception the employment at-will doctrine when the employer's decision to terminate an employee offends public policy.  *Edmondson v. Shearer Lumber Prods.*, 75 P.3d 733, 737 (Idaho 2003).  The exception seeks to strike a balance between the "interests of society, the employer, and the employee" and protects employees who "refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights or privileges."  *Id.*  Determining whether an employee engaged in a protected activity is a question of law.  *Bollinger v. Fall River Rural Elec. Co-op, Inc.*, 272 P.3d 1263, 1271 (Idaho 2012).  That determination, in turn, rests on an analysis of "(1) whether there is a public policy at stake sufficient to create an exception to at-will employment, and (2) "whether the employee acted in a manner sufficiently in furtherance of that policy."  *Id.*  "The claimed public policy generally must be rooted in 'case law or statutory language.'"  *Id.*  If the employee engaged in

---

[7] To the extent Plaintiff reiterates her arguments that Defendant's reasons for terminating her must have been pretextual because its reasoning for terminating her was imprudent, the Court does not find those arguments persuasive for the reasons described above.

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 20**

protected activity prior to her termination, she also must "show that her termination was in fact motivated by her participation in that activity." *Id.*

Plaintiff claims that she engaged in two protected activities prior to her termination: (i) reporting legal risks under Title VII of the Civil Rights Act created by Ms. Jones's and Ms. Searle's behavior and (ii) opposing the misclassification of an employee under the FLSA.  Pln.'s Mem. in Supp. of MSJ at 24-25 (Dkt. 27-1).

1. Plaintiff's Title VII theory was not plead and will not be addressed.

Raising a new theory of recovery at the summary judgment stage is generally impermissible. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006). Federal Rule of Civil Procedure 8 requires a party to provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (citing *Swierkiewics v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  When a Plaintiff's asserted grounds for a claim on summary judgment differ from those alleged in the complaint, considering that new theory of recovery would be, in effect, an impermissible amendment of the complaint after the close of discovery.  *Dickinson Frozen Foods, Inc. v. FPS Food Process Solutions Corp.*, No. 1:17-cv-00519-MMB, 2022 WL 3346296, at *6 (D. Idaho Aug. 12, 2022) (citing *Quality Res. & Servs., Inc. v. Idaho Power Co.*, 706 F. Supp. 2d 1088, 21096 (D. Idaho 2010)).

Here, Plaintiff's Cross-Motion for Summary Judgment raises a number of new factual allegations that are not mentioned in the Complaint.  While the Complaint is confined to Plaintiff's refusal to reclassify an employee as exempt under the FLSA, Plaintiff's Cross-Motion alleges that Plaintiff also witnessed Defendant's co-owner, Ms. Jones, repeatedly harass and demean a previous member of the leadership team until he quit.  Pln.'s Mem. in Supp. of MSJ at 24-25.  She further alleges that she reported this history of harassment to Mr. Brazier and advised

him that it exposed Defendant to legal risk under Title VII because Ms. Jones created a hostile workplace environment.  Pln.'s Reply in Supp. of MSJ at 7-8 (Dkt. 32).  And, she continues, she was fired shortly after reporting this potential Title VII violation.  *Id.*  None of these allegations appear in Plaintiff's Complaint and will not be considered now to support Plaintiff's public policy claim.

Plaintiff attempts to circumvent the missing allegations in her Complaint, arguing that her expert witness report was sufficient to place Defendant on notice of the new theory of recovery. Pln.'s Reply at 8-9 (Dkt. 32).  Yet, where factual allegations are not raised in a complaint, an expert report is "rarely an adequate substitute" for Rule 8's notice requirements.  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011).  Looking at Plaintiff's expert report, it does not mention Title VII whatsoever and provides, in pertinent part, that Plaintiff "raised concerns about disrespectful behavior from several leaders . . . [which Defendant] identified . . . as the reasons for termination."  Cruz. Dec., Ex. A (Dkt. 32-1).  This is not sufficient to put Defendant on notice of a public policy claim based on Plaintiff reporting Title VII violations. Moreover, this Court already considered and rejected this argument in ruling on Plaintiff's Motion to Compel.  *See* Order on Motion to Compel at 4-6 (Dkt. 36).  Consequently, the Court will not address this new theory of recovery at the summary judgment stage.

2.  <u>Plaintiff's FLSA theory fails as a matter of law.</u>

Defendant argues that Plaintiff's wrongful discharge claim based on the FLSA fails for two reasons: (i) Plaintiff does not point to any unlawful act she refused to commit and (ii) even if she established a public policy of which she acted in furtherance, Plaintiff cannot show causation because the decision to terminate her was made before Plaintiff had any discussions regarding

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 22**

reclassifying an employee from non-exempt to exempt.  Def.'s Mem. in Supp. of MSJ at 19-20 (Dkt. 21-1).

"Although 'many activities and interests engaged in by employees benefit the community. . . not all of them are recognized as falling within the public policy exception.'" *Venable v. Internet Auto Rent & Sales, Inc.*, 329 P.3d 356, 361 (Idaho 2014) (quoting *McKay v. Ireland Bank*, 59 P.3d 990, 994 (Idaho Ct. App. 2002)).  A plaintiff must do more than allege that she refused to break the law and "simply cite to a broad-ranging act, without a specific provision or implementing regulation that was allegedly violated." *Id.*  Instead, a Plaintiff must "specifically identify the public policy in question and then provide evidence to show a violation of the public policy." *Id.* at 362.

Plaintiff cannot show a specific public policy that was violated because she has not identified with specificity the statue or regulation that Defendant violated (or asked her to violate).  *See Venable*, 329 P.3d at 362.  It is not enough to simply assert that Defendant wanted her to violate the FSLA by reclassifying an employee as exempt without providing any other evidence as to why that reclassification ran afoul of any part of the FLSA.  Furthermore, even assuming that Plaintiff's generalized FLSA allegations are enough, Plaintiff cannot show that she refused to act unlawfully.  *See Bollinger*, 272 P.3d at 1271 (explaining that the public policy exception to at-will employment protects employees who "refuse to commit unlawful acts").  At best, the evidence shows that Plaintiff did not approve of the plan, but she did not actively refuse to participate in it.  Ashby Dec., Ex. A (Dkt. 21-9). ("If . . . we are all willing to agree to disagree on the level of status for this position, then we can move forward with [the] proposal. Please keep in mind this does put us at risk if an audit were to ever take place[.]").  Accordingly,

Defendant's Motion for Summary Judgment is granted as to this claim because Plaintiff cannot show the specific policy that Defendant violated or that she refused to participate in the violation.

## CONCLUSION

There is a genuine dispute of material fact on Plaintiff's breach of contract claim and related Wage Claim Act claim. While the Transition Plan resembles a contract in important respects, factual questions remain as to whether the parties mutually understood the material terms of the agreement such that a binding contract formed in fact. Accordingly, the parties' cross-motions for summary judgment are denied with respect to these claims.

Conversely, there is no genuine dispute of fact relating to Plaintiff's FMLA claims, ADA claim, or public policy claim. Plaintiff has pointed to no evidence that she was on leave as opposed to working full time after September 13, 2021, nor has she pointed to any specific or substantial evidence of pretext. While the Court is sympathetic to Plaintiff's concerns regarding the wisdom of her termination, those concerns do not demonstrate that the proffered reasons for her termination should not be believed. Finally, Plaintiff's public policy claim fails because she does not point to a specific policy that Defendant violated, or show that she refused to participate in the alleged violation.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment (Dkt. 27) is DENIED;

2. Defendant's Motion for Summary Judgment (Dkt. 21) is DENIED as to Counts 3 and 5 of Plaintiff's Complaint, which assert claims for a Wage Claim Act violation and breach of contract, respectively;

**MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT – 24**

3.  Defendant's Motion for Summary Judgment (Dkt. 21) is GRANTED as to Counts 1, 2,

    and 4 of Plaintiff's Complaint, which raise claims for disability discrimination, FMLA

    violations, and wrongful termination in violation of public policy.

DATED: May 23, 2023

Raymond E. Patricco
Chief U.S. Magistrate Judge