# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SANDRA BOLINSKE, | Case No.  1:22-cv-00082-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (Dkt. 45)** |
| vs. | |
| STINKER STORES, INC., | |
| Defendant. | |

Pending is Plaintiff's Motion for Reconsideration of the Court's order denying Plaintiff's request for summary judgment on her breach of contract and wage claims (Dkt. 45).  All parties have consented to the exercise of jurisdiction by a United State Magistrate Judge.  Dkt. 7. Because Plaintiff has not established that the Court clearly erred when it declined to determine her employment status as a matter of law, the Court will deny the motion for reconsideration.

## PROCEDURAL HISTORY

Plaintiff Sandra Bolinske was Defendant Stinker Stores, Inc.'s Director of Human Resources from 2013 until she was fired on October 11, 2021.  Pln.'s Stmnt. of Facts ¶¶ 1, 25 (Dkt. 27-2).  On January 24, 2022, she filed suit challenging the lawfulness of her termination.[1] Compl. (Dkt. 1-3).

Plaintiff raised five claims in her complaint: (i) disability discrimination in violation of the Idaho Human Rights Act and the Americans with Disabilities Act, (ii) Family Medical Leave Act interference and retaliation, (iii) an Idaho Wage Claim Act violation, (iv) wrongful

---

[1] The Court's summary judgment order contains a more detailed background section, which the Court incorporates by reference.  5/23/2023 MDO at 1-6 (Dkt. 43).

**MEMORANDUM DECISION AND ORDER – 1**

termination in violation of public policy, and (v) breach of contract.  *See generally id.*  The parties filed cross-motions for summary judgment on each claim.  *See* Def.'s MSJ Mtn (Dkt. 21) and Pl.'s MSJ Mtn (Dkt. 27).  On May 23, 2023, the Court granted Defendant's motion for summary judgment on Plaintiff's discrimination and retaliation claims (Counts One, Two, and Four).  5/23/2023 MDO at 25 (Dkt. 43).  The Court, however, found that there was a genuine dispute of material fact about whether the parties entered a contract that limited Defendant's ability to terminate Plaintiff's employment at-will.  *Id.* at 8-12.  The Court, accordingly, denied the cross-motions for summary judgment on the breach of contract and wage claims (Counts Three and Five).  *Id.* at 24.

Plaintiff asks the Court to reconsider its contract-related rulings.  Pl.'s Mtn to Recon. (Dkt. 45).

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide several mechanisms for seeking reconsideration of a court order.  Where a judgment has been issued, a motion for reconsideration may be brought pursuant to Rule 59(e) or Rule 60(b).  *See* FED. R. CIV. P. 59(e) (setting a deadline for motions to alter or amend a judgment) and FED. R. CIV. P. 60(b) (setting forth the grounds for relief from a final judgment).  In all other situations, the court has discretion to reconsider its decisions under Rule 54(b), which permits the revision of interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  FED. R. CIV. P. 54(b).  In addition, district courts possess the inherent common-law authority to rescind or modify any interlocutory order so long as the court retains jurisdiction over the matter.  *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888-889 (9th Cir. 2001); *see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011).

**MEMORANDUM DECISION AND ORDER – 2**

Motions for reconsideration, however, are generally disfavored.  S*ee Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (calling reconsideration an "extraordinary remedy" that should be "used sparingly").

"The major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting *United States v. Desert Gold Mining Co.*, 433 F.2d 713, 715 (9th Cir. 1970)). A party seeking reconsideration must show "more than a disagreement with the [c]ourt's decision."  *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1069-1070 (E.D. Cal. 2009).

## DISCUSSION

Because the law and the facts have not changed, the only ground for reconsideration of the Court's prior ruling would be to fix a clear error or avert manifest injustice.  Plaintiff's challenges to the Court's ruling fall far short of this standard.

### A.  Consideration of Plaintiff's Subjective Intent

The parties' cross-motions for summary judgment asked the Court to determine whether Plaintiff's "Resignation and Transition Plan" – which Plaintiff drafted and Defendant's president and vice president initialed – formed a binding contract guaranteeing Plaintiff's employment through the end of 2021.  *See* Def.'s MSJ Mtn at 3-8 (Dkt. 21-1) and Pl.'s MSJ Mtn at 4-11 (Dkt. 27-1).  The Court denied both motions because reasonable factfinders could disagree about whether the parties shared a mutual understanding of the material terms of the Plan.  5/23/2023 MDO at 10-12 (Dkt. 43).  In other words, jurors could reach different conclusions about how to read and understand the Plan.

**MEMORANDUM DECISION AND ORDER – 3**

Plaintiff argues that the Court erred in reaching this conclusion because it improperly considered evidence of her subjective intent.  Pl.'s Mtn to Recon. at 7-8 (Dkt. 45-1).

When interpreting a contract – or in this case a putative contract – the court's primary objective is "to discover the mutual intent of the parties at the time the contract is made." *Liberty Bankers Life Ins. Co. v. Witherspoon, Kelley, Davenport & Toole, P.S.*, 159 Idaho 679, 688 (Idaho 2018).  The court begins with the document's language, which is the best indication of intent.  If this language is unambiguous, the Court will construe the meaning of the alleged contract as a matter of law, reading the alleged contract "in its plain, ordinary and proper sense." *Id.* at 688-689.  If, however, the document is ambiguous, interpretation of the alleged contract becomes a factual issue.  *Lamprecht v. Jordan*, LLC, 139 Idaho 182, 185 (Idaho 2003).

In *J.R. Simplot Co. v. Bosen*, 144 Idaho 611 (Idaho 2006), the Idaho Supreme Court provided the following guidance for resolving contractual ambiguities:

> The determination of the parties' intent is to be determined by looking at the contract as a whole, the language used in the document, the circumstances under which it was made, the objective and purpose of the particular provision, and any construction placed upon it by the contracting parties as shown by their conduct or dealings. A party's subjective, undisclosed intent is immaterial to the interpretation of a contract.

*Id.* at 614 (internal citations omitted).  The Idaho Supreme Court applies the same principles to disputes over contract formation.  *See Seward v. Musick Auction, LLC*, 164 Idaho 149, 159 (Idaho 2018) ("the existence and nature of an offer is judged by its objective manifestations, not by any uncommunicated beliefs, mental reservations, or subjective interpretations or intentions of the offeror") (internal citation omitted).

Here, the Court considered Plaintiff's statements to her supervisor, her deposition testimony about the meaning of the Plan, and her active search for employment to find that there

**MEMORANDUM DECISION AND ORDER – 4**

was a genuine dispute regarding the Plan's status as a contract promising Plaintiff employment for a fixed duration.  5/23/2023 MDO at 11-12 (Dkt. 43).

Plaintiff has not shown that this was clear error.  While a party's private intentions are irrelevant, communications and actions may be properly considered.  *Bosen*, 144 Idaho at 614; *see also Porcello v. Porcello*, 167 Idaho 412, 424-425 (Idaho 2020) ("Extrinsic evidence properly considered in deciding whether the contract is ambiguous may include . . . any conduct of the parties which reflects their understanding of the contract's meaning.") and Idaho Jury Instruction ("IDJI") No. 6.08.1 (directing the jury to consider "[a]ny communications, conduct or dealings between the contracting parties showing what they intended and how they construed the doubtful language . . . provided that [these communications, conduct or dealings] may not completely change the agreement . . . ").  Plaintiff's statements to her employer and her job search fall into these categories.

Plaintiff's deposition testimony presents a closer question.  The law in this area, however, is not definitive enough to warrant reconsideration.  *Smith v. Clark County Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) ("Clear error occurs when the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.") (internal citation omitted).  As Defendant points out, the Idaho Civil Jury Instructions permit the jury to consider a witness's "explanation or interpretation of [a] contract" subject to certain caveats.  IDJI No. 6.08.2.  The Court's use of Plaintiff's testimony accords with this instruction.  During Plaintiff's deposition, defense counsel asked Plaintiff to say how she, as the drafter of the Plan, understood the words of the document.  At *opposing* counsel's request, the Court considered these admissions as one factor that could lead a reasonable jury to resolve the ambiguities in the Plan's language against Plaintiff.  This is entirely different than permitting a litigant to avoid summary

**MEMORANDUM DECISION AND ORDER – 5**

judgment on a contract claim based on her own self-serving claims about her undisclosed desires and intentions.  *See C.A. Acquisition Newco, LLC v. DHL Express (USA), Inc.*, 696 F.3d 109, 114 (1st Cir. 2012) ("although each party's uncommunicated subjective understanding of the agreement during negotiations is generally irrelevant, statements of subjective intent are relevant when contrary to the party's own interests").

In any event, if the Court were to excise Plaintiff's deposition testimony from its consideration, that would not change the outcome of the Court's ruling.  Plaintiff's statements to Defendant about taking another job and her active job search are sufficient, standing alone, to support an inference that Plaintiff did not view the Plan as limiting her ability to terminate her employment relationship with Defendant.

*Bosen* and related case law, consequently, do not provide a basis for reconsideration of the Court's prior ruling.

### B.  The Import of Plaintiff's Job Search

Plaintiff next argues that the Court "unreasonably inferred that [Plaintiff's] search for future employment showed a lack of intent to remain with her current employer through the end of the contract term."  Pl.'s Mtn to Recon. at 5 (Dkt. 45-1).  The scope, nature, and significance of Plaintiff's job search, however, are factual issues that the Court can only resolve at summary judgment if the evidence admits of a single interpretation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge") and *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) ("Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts.") (internal citation omitted).  In denying Plaintiff's motion for summary judgment, the

**MEMORANDUM DECISION AND ORDER – 6**

Court properly viewed the evidence about her job search in the light most favorable to Defendant. *Anderson,* 477 U.S. at 255.

### C. Mutuality of Obligation

Plaintiff's final claim of error centers on mutuality of obligation. Pl.'s Reply at 1-3 (Dkt. 48). Plaintiff maintains that the Court wrongly focused on her obligations and duties under the Plan, although these were not material terms of the supposed contract. *Id.* at 1-2 (arguing that it does not "matter" whether she was able to quit at-will or was required to keep working until December 31, 2021; *see also* Pl.'s Mtn to Recon. at 3 (Dkt. 45-1).

Plaintiff correctly states the law, but misunderstands the Court's ruling and, therefore, misapplies the law to the facts of this case. It is well-settled that the obligations of parties to a contract need not be coextensive. *Doughty v. Idaho Frozen Foods Corp.*, 112 Idaho 791, 794 (Idaho 1987). An employer and employee can modify the terms of an at-will employment arrangement by agreeing to "a contract term limiting the right of *either* to terminate the contract at will." *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 240 (Idaho 2005) (emphasis added). To the extent the Court's ruling created confusion about this issue, the Court reiterates that "[t]he crux of Plaintiff's breach of contract claim is whether the Transition Plan was a contract that limited Defendant's ability to terminate her at-will before December 31, 2021." 5/23/23 MDO at 10 (Dkt. 43).

Plaintiff is correct that one potential reading of the Plan is that Defendant guaranteed her employment through the end of the year, but she was free to leave at any time. But this is not the only reasonable reading of the Plan (or the reading Plaintiff initially posited).

In the summary judgment briefing, Plaintiff repeatedly declared that the "whole" purpose of the Plan was to guarantee that Defendant did not experience a gap in HR services through the

**MEMORANDUM DECISION AND ORDER – 7**

end of the year.  Pl.'s MSJ Mtn at 2, 8 (Dkt. 27-1) (asserting that Plaintiff agreed to "stay

employed with Stinker while it hired her replacement" and that "whole point [of the Plan] was

for [Plaintiff] to assist with Stinker's transition to a new HR professional") and Pl.'s MSJ Reply

at 3 (Dkt. 32) ("the whole point" of the Plan was "that Defendant could guarantee [Plaintiff]

being available to work through the end of the year, and to ensure that, it agreed to pay her

through the end of the year.").  In other words, Plaintiff originally argued that the Plan limited

both parties' ability to end the employment relationship.  The Court's May 23, 2023 ruling

focused on the evidence that would permit a jury to reject this reading of the Plan.

This was not clear error.  Where, as here, the language of a putative contract is

ambiguous, the factfinder must determine the meaning of the contested document by considering

the document *as a whole* and the circumstances under which the document was created.  *Bosen*,

144 Idaho at 614; *see also Seward*, 164 Idaho at 159-160 (intent to contract is determined by

considering "the surrounding facts and circumstances," including the parties' words and the

transactional context in which the parties "verbalized or acted").  Plaintiff's obligations (if any)

under the Plan bear directly on these matters.

The Plan, which is written in the first person, states "[m]y last day of employment with

Stinker Stores, Inc. will be December 31, 2021."  Tran. Plan (Dkt. 27-4, pp. 25-26).  A

reasonable factfinder could find conclude that this sentence limited (i) Plaintiff's right to quit, (ii)

Defendant's right to fire her at-will, (iii) both, or (iv) neither.[2]

Plaintiff's "performance" under the Plan does not solve this conundrum or permit the

Court to determine the meaning of the Plan as a matter of law.  Plaintiff argues that her

---

[2] A jury could find, for example, that the title of the Plan and use of the term "resignation period" indicated that Plaintiff was resigning and that the parties expected the pre-existing at-will employment relationship to continue through Plaintiff's resignation date.

**MEMORANDUM DECISION AND ORDER – 8**

performance – i.e., her continued employment – is strong evidence that an enforceable contract was reached.  Pl.'s Mtn to Recon. at 3 (Dkt. 45-1).  The problem with this argument is that employment is contractual whether it is at-will or for a fixed term.  *See Hummer v. Evans*, 129 Idaho 274, 280 (Idaho 1996) ("employment at will constitutes a contract").  The question is not whether Plaintiff had a contractual relationship with Defendant: she unquestionably did.  The question is whether the Transition and Resignation Plan contractually modified Plaintiff's at-will employment status.

This is a question of fact that the Court properly declined to resolve at summary judgment.  *Id.* at 279 (an employee's employment status is a factual finding); *see also Harkness v. Burley*, 110 Idaho 353, 359 (Idaho 1986) (generally speaking, "the determination of the existence of a sufficient meeting of the minds to form a contract [modifying the at-will employment relationship] is a question of fact to be determined by the trier of facts") and *Atwood v. W. Constr.*, 129 Idaho 234, 238 (Idaho App. 1996) (whether a conversation about an employee's pension constituted a promise of continued employment was a "factual issue . . . ordinarily . . . determined by a jury").  As the Court previously explained, Plaintiff's Resignation and Transition Plan is subject to conflicting interpretations.  Its meaning, consequently, is "inappropriate for decision on a motion for summary judgment."  *See Stanger v. Walker Land & Cattle, LLC*, 169 Idaho 566, 573 (Idaho 2021) ("[t]he meaning of relevant, ambiguous terms are left to the fact finder").

## ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Reconsideration (Dkt. 45) is DENIED.

DATED: November 13, 2023

Raymond E. Patricco
Chief U.S. Magistrate Judge

MEMORANDUM DECISION AND ORDER – 9